**Michael Ray CROCKER, Plaintiff–Appellant,**

v.

**TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION; Ronald Lee Carter, individually and as Executive Director of Tennessee Secondary School Athletic Association, Defendants–Appellees.**

**No. 91–5615.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1992.

Decided Nov. 18, 1992.

Gerald A. Smith, Jr. (argued and briefed), Blackburn, Little, Smith & Slobey, Nashville, Tenn., for plaintiff-appellant.

Charles Hampton White (briefed) and Richard L. Colbert (argued), Nashville, Tenn., for defendants-appellees.

Before: MERRITT, Chief Judge; JONES and BATCHELDER, Circuit Judges.

MERRITT, Chief Judge.

Plaintiff claims that the Tennessee Secondary School Athletic Association ("TSSAA") and Ronald Carter, its executive director, violated 42 U.S.C. § 1983 by interfering with the right of plaintiff as handicapped student to participate in interscholastic football as required under the Education of the Handicapped Act ("EHA"), 20 U.S.C. § 1400 *et seq.* Chief

Judge Nixon granted summary judgment for defendants. He found that the plaintiff had not shown that he was deprived of any federal right entitling the plaintiff to damages. We agree. Plaintiff also claims that defendants took retaliatory action against him for exercising his federal constitutional right to enforce his statutory rights through the courts. It is unclear whether the plaintiff's second claim is properly before this Court, but we find it unnecessary to evaluate the jurisdictional challenges to this claim as plaintiff has not made out a colorable claim of retaliation.

## I. Facts and Procedural History

The events leading to this appeal were precipitated by Michael Crocker's transfer from Ezell–Harding Christian School, a private secondary school in Nashville, to McGavock High School, Michael's local public secondary school. The Crockers have maintained that Michael transferred to gain access to remedial educational programs that were unavailable to him at Ezell–Harding.

Following the transfer, Carter ruled Michael Crocker ineligible to participate in specified interscholastic sports, including football, for a period of twelve months. Carter based his ruling on the TSSAA transfer rule under which students who transfer from one TSSAA member school to another are ineligible to participate in specified sports for one year unless the transfer was made because of a change of residence.

McGavock High School appealed to Carter on Michael's behalf, requesting a waiver under the TSSAA's hardship rule. The hardship rule permits the Executive Director to waive the transfer rule if its application would unduly burden the student affected. Representatives from McGavock explained to Carter that Michael transferred in order to gain access to an English class less advanced than the college preparatory classes available to him at Ezell–Harding and argued that a transfer

to gain access to appropriate educational services should constitute a hardship. Carter denied the appeal because he concluded that Crocker did not suffer a hardship under the TSSAA rules.

Following Carter's denial Metro Schools classified Michael as having a learning disability that qualified as a handicapping condition under the EHA. On August 22, 1988 McGavock submitted a second hardship appeal to the TSSAA urging that Michael's official status as a handicapped child under the EHA justified and required a waiver of the transfer rule. The TSSAA denied the second appeal.

On August 23, 1988, the Crockers filed a civil action in federal district court seeking to enjoin the TSSAA from applying the transfer rule to their son so as to make him ineligible. The Crockers claimed that application of the transfer rule to Michael violated his rights as a handicapped student. Following a trial, the District Court held that to deny Crocker the opportunity to participate in interscholastic athletics if he in fact transferred schools in order to receive educational benefits suitable to his handicapping condition would amount to discrimination on the basis of a handicap.[1] Furthermore, the district court held that the local educational agency and not the TSSAA should determine whether Crocker had genuine educational motivations for his transfer. The court enjoined the TSSAA from applying the transfer rule pending a determination by the municipal government of Metropolitan Nashville–Davidson County as to the reason for Michael's transfer from Ezell–Harding to McGavock.

On appeal, this Court ruled that the federal suit was premature because the Crockers did not first exhaust their administrative remedies under the EHA. *Crocker v. TSSAA*, 873 F.2d 933 (6th Cir.1989). Accordingly, we dissolved the District Court's injunction and dismissed the litigation. Prior to our dissolution of the injunction, Crocker had played on the McGavock foot-

---

1. The District Court later concluded that Crocker was not entitled to the protection of the anti-discrimination provisions of the Rehabilitation Act, and Crocker does not appeal that decision.

Nonetheless, an alternate authority for its original conclusion remains under the regulations promulgated pursuant to the EHA. *See* 34 C.F.R. § 104.37(c).

ball team. Subsequent to the dissolution of the injunction, the TSSAA and Carter notified McGavock that the school had to forfeit all football games in which Michael had participated while the District Court's injunction was in effect. The TSSAA and Carter also declared that Michael would be ineligible to participate in interscholastic football and basketball from and after September 23, 1989 because of his court-ordered participation the previous year.

In accordance with the EHA's required procedures, a team of teachers and psychologists met on September 5, 1988 to establish an Individualized Educational Plan ("IEP") for Michael to follow at McGavock. The IEP provided for continued participation in a mainstream educational program with provisions for monitoring Michael's progress and having teachers available for support. Michael's parents agreed with the educational program, but refused to approve the IEP because Metro would not include football on the basis that it would not help Michael's written language handicap.

Because Metro refused to write participation in interscholastic sports into Michael's IEP, the Crockers sought and obtained a due process hearing from the Tennessee Department of Education. The TSSAA was not made a party to the administrative action, nor was it permitted to attend. The hearing was held on September 29, 1989. Administrative Judge James Mulroy issued his order and opinion on October 13, 1989. He found that Crocker's handicap had motivated his transfer from Ezell–Harding to McGavock and that the TSSAA's refusal to grant a hardship waiver amounted to discrimination. Judge Mulroy ruled that Metro and the TSSAA must allow Crocker to participate in all interscholastic athletics without threat of retaliation. Judge Mulroy did not rule on the question of whether participation in interscholastic athletics was a "related service," as defined by the EHA, that should have been incorporated into Michael's IEP.

After the ruling was announced, legal counsel for Carter and the TSSAA made public statements that the decision did not appear to be binding on the TSSAA and that the TSSAA's position with respect to Michael's participation remained unchanged. Following this announcement, the TSSAA refused to discuss its position on the matter with representatives from McGavock High School or with the Crockers' legal counsel.

On the same day that Judge Mulroy issued his decision, the coach of McGavock High School's football team, unsure of TSSAA's position with respect to Michael's participation, refused to permit him to participate in a game with another member school of the TSSAA. Prior to the next week's game, the coach attempted to ascertain whether the TSSAA would comply with Judge Mulroy's order. He found the TSSAA unresponsive to his inquiries. Unwilling to risk reprisal or retaliation, the coach sidelined Crocker for the next game as well.

On October 18, 1989, Michael Crocker filed this § 1983 action in federal district court claiming that the TSSAA and Carter had deprived him of rights secured by the EHA, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988). Crocker sought an injunction to prohibit the TSSAA from any further interference with his participation in interscholastic sports at McGavock. Crocker also sought compensatory and punitive damages in the amount of $1.5 million dollars.

On October 19, 1989, the District Court issued a temporary restraining order that enjoined Carter and the TSSAA from "all acts which might prevent, prohibit or discourage McGavock High School, its coaches or administrative personnel from allowing Michael Ray Crocker full participation in interscholastic athletics, pending further order of this Court." *Crocker v. TSSAA*, No. 3–89–803 (M.D.Tenn. Oct. 19, 1989). The District Court held a hearing on October 23, 1989, to determine whether a preliminary injunction should issue. On November 2, 1989, the Court issued a preliminary injunction against Carter and the TSSAA, holding that the defendants had interfered with rights guaranteed to Michael by the EHA and prescribed by the

due process hearing held by Judge Mulroy. *Crocker v. TSSAA*, No. 3-89-803 (M.D.Tenn. Nov. 2, 1989).

The defendants appealed the preliminary injunction. Because Crocker had graduated from McGavock in May 1990, prior to the issuance of this Court's opinion, we held that as it pertained to Michael's eligibility for interscholastic sports, the injunction was moot. *Crocker v. TSSAA*, No. 89-6450/89-6451, 908 F.2d 972 (July 30, 1990). We upheld the injunction to the extent that it enjoined the TSSAA from imposing sanctions against Metro in relation to Michael's participation in interscholastic athletics at McGavock during the 1988-89 school year. We found that even though we ultimately vacated the District Court's initial injunction, it was valid and enforceable until it was dissolved by this Court. We concluded that Crocker, Metro, and McGavock should not later be penalized for actions taken in reliance on a valid injunction.

On April 22, 1991, the District Court granted summary judgment in favor of the defendants with respect to the plaintiff's claim for damages. The District Court held that Michael Crocker failed to show that Carter or the TSSAA deprived him of a federal right under the Rehabilitation Act or the EHA. Judge Nixon determined that Crocker did not acquire such a right at the administrative hearing because "Judge Mulroy never reached the gravamen of Michael's complaint: was participation in interscholastic football a related service that should have been incorporated in his [Michael's] IEP for the academic year 1989-1990." Finding no deprivation of a right secured by federal law, the District Court found it unnecessary to determine whether the defendants acted under color of state law within the meaning of § 1983. Plaintiff now appeals the summary judgment against him.

## II. Analysis

■ We agree with Chief Judge John Nixon below that the facts alleged in this case do not state a valid claim for damages under the EHA. Section 615(e)(2) of the Act, 20 U.S.C. § 1415(e)(2), confers upon courts reviewing handicapped claims the authority to "grant such relief as the court determines is appropriate." In this case, general damages for emotional anguish, including the pain of missing two high school games, do not constitute "appropriate" judicial relief. Other cases under the Act have limited monetary damages to restitutionary types of relief. They have allowed restitution to parents for the expense of providing educational services for the handicapped child, but we do not find case authority interpreting the Act to allow an award of general damages for emotional injury or injury to a dignitary interest.

In *Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 370-71, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985), the Court appears to interpret § 1415(e)(2) as not allowing "damages" in general but as allowing "reimbursement [of] ... expenses that it [the municipal government] should have paid all along and would have borne in the first instance had it developed a proper IEP." We read *Miener v. State of Missouri*, 800 F.2d 749, 752-54 (8th Cir.1986), and *Anderson v. Thompson*, 658 F.2d 1205, 1210-14 (7th Cir.1981), as suggesting the same approach. Within our own circuit, Judge Douglas Hillman reached the same conclusion in *Waterman v. Marquette-Alger Intermediate School District*, 739 F.Supp. 361 (W.D.Mich.1990).

As a result of the findings of the state administrative process and the federal injunctive relief granted in this case, young Crocker was allowed to play high school interscholastic sports except for two games. TSSAA sought rigidly to enforce its one-year rule against transferring athletes. In doing so it caused young Crocker and his family considerable difficulty and emotional anguish. But TSSAA was not made a party to the state administrative proceeding and was, therefore, not judicially bound by the administrative judgment.

Although under the circumstances the organization may appear stubborn and inflexible in its conduct, it is ordinarily entitled to enforce its athletic rules in order to deter students, parents and school officials

from trying to turn high school athletics into an activity that overshadows or unduly interferes with academic life. The main purpose of high school is to learn science, the liberal arts and vocational studies, not to play football and basketball. Young Crocker and his family seem to have taken sports more seriously than academic studies, and the TSSAA seems to have overreacted to this situation. The EHA does not contemplate such actions for damages in these circumstances. There is no case authority for it, and we believe such damage relief would be inequitable and inappropriate.

■ Because Crocker cannot recover general damages under the EHA, he cannot recover damages under § 1983 for any violation of his rights secured by the EHA. Section 1983 merely secures the federally protected rights a plaintiff already holds. It does not expand those rights. Through § 1983 Crocker was able to bring an action that might otherwise have been foreclosed. Section 1983 did not provide a right to damages where none existed before.

### III. Retaliation Claim

■ The plaintiff also claims that the TSSAA took retaliatory action against him for his lawful resort to the courts in violation of his rights under the federal Constitution. Plaintiff bases his claim of retaliation on his right of access to the Courts grounded in the First Amendment, *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir.1986), the Due Process Clause of the Fourteenth Amendment, *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and the Privileges and Immunities Clause of Article IV, *Chambers v. Baltimore and O.R.R.*, 207 U.S. 142, 28 S.Ct. 34, 52 L.Ed. 143 (1907).

■ Defendants argue that plaintiff's claim of retaliation is not properly before this Court because plaintiff failed to argue it below. Plaintiff argues that it is not essential to state the statutory or constitutional basis for a § 1983 claim as long as he has adequately stated the facts underlying the claim.[2] We find that it is unnecessary to resolve the dispute between the parties with respect to whether the question was properly raised, because we find that the facts as stated by plaintiff do not support a claim of unconstitutional retaliation.

It is true, as argued by plaintiff, that an otherwise lawful act is actionable when taken in retaliation for the exercise of a constitutional right. *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir.1990). It is too far a stretch, however, to characterize defendants' actions in this case as retaliatory. Plaintiff does not allege actions by defendants sufficient to rise to the level of retaliation. Plaintiff's and defendants' versions of what occurred are surprisingly similar. Plaintiff asserts not that defendants affirmatively interfered with his right to participate in McGavock's football program in retaliation for exercising plaintiff's right of access to the courts, but that defendants refused to cooperate. Failure to cooperate through inaction without an affirmative duty to act is not a sufficient basis on which to ground liability.

Furthermore, at the core of a case of retaliation is the intent to impede the exercise of a constitutional right. Plaintiff claims that by threatening reprisal against McGavock High School if Crocker was permitted to participate in athletics defendants intended to impede Crocker's access to the courts. Defendants, however, did not react to plaintiff's bringing suit in the courts. Instead, defendants took the stance from the beginning that the transfer rule required plaintiff to abstain from partic-

---

2. We do note that plaintiff's cases to support his proposition are inapposite. Plaintiff cites *McCalden v. California Library Assn.*, 919 F.2d 538, 547 (9th Cir.1990), and *Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir.1985), for the proposition that a plaintiff does not have to state the statutory or constitutional basis for a § 1983 claim. Both of those cases, however, concerned dismissal at the trial court level and not consideration of a newly raised issue on appeal. Ordinarily a party should not be allowed to change the theory of his case after trial; however, appellate consideration of a new issue is appropriate when fundamental rights are at issue. *Wratchford v. S.J. Groves & Sons Co.*, 405 F.2d 1061 (4th Cir.1969).

ipation in interscholastic sports for one year after he changed schools. Defendants adhered to this position throughout. Even if defendants' position was in error their defense of it cannot be characterized as retaliatory. Thus we also conclude that plaintiff's claim of retaliation must fail.

Accordingly, the judgment of the District Court is AFFIRMED.