47 F.3d 1168
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Michael Ray CROCKER, Plaintiff-Appellant,
v.
TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION and Ronald
Lee Carter, Individually and as Executive Director
of the Tennessee Secondary School
Athletic Association,
Defendants-Appellees.
 No. 93-6252.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1995.
 
 Before: KEITH, JONES, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Michael Crocker, appeals the denial of his 42 U.S.C. Sec. 1988 motion for attorney fees. Plaintiff obtained a preliminary injunction in his Sec. 1983 claim for deprivation of federal rights, but lost his claim on the merits in a summary judgment determination for the defendants which was affirmed on appeal. We find that the district court did not abuse its discretion in denying attorney fees and affirm.
 
 I.
 
 2
 In 1988 Crocker was a tenth-grade student at Ezell-Harding Christian School, a private secondary school, where he played on the school's football and basketball teams. Shortly after the end of basketball season he transferred to McGavock High School ("McGavock"), his local public high school, allegedly for the purpose of seeking a less rigorous English class.
 
 
 3
 Defendant Carter, executive director of defendant Tennessee Secondary Schools Athletic Association ("TSSAA"),barred Crocker from participating in certain interscholastic sports for one year following the transfer in accordance with TSSAA's transfer policy.
 
 
 4
 McGavock appealed the determination, invoking TSSAA's hardship exception to its policy, which allows TSSAA to waive the transfer rule "ifits application would unduly burden the student affected." Crocker v. Tennessee Secondary Sch. Athletic Ass'n, 980 F.2d 382, 384 (6th Cir. 1992). McGavock argued that Crocker's transfer to gain access to appropriate educational services should constitute a hardship. Carter disagreed.
 
 
 5
 Following Carter's denial of the appeal, the Metropolitan Government of Nashville and Davidson County ("Metro") classified Crocker as learning disabled under the then Education of the Handicapped Act ("EHA"), 20 U.S.C. Sec. 1400 et seq.[1] McGavock subsequently submitted a second hardship appeal which TSSAA denied.
 
 
 6
 Plaintiff's parents then filed a civil action in federal court to enjoin TSSAA from applying the transfer rule to their son. The district court enjoined TSSAA from applying the rule pending a determination by Metro as to the reason for Crocker's transfer between schools.
 
 
 7
 On appeal, we dissolved the injunction and dismissed the case for plaintiffs' failure to exhaust administrative remedies. After the dissolution of the injunction, TSSAA and Carter notified McGavock that the school had to forfeit all football games in which Crocker had participated while the district court's injunction was in effect. They also declared Crocker ineligible to play because of his court-authorized participation the previous year.
 
 
 8
 In accordance with the EHA's required procedures, an Individualized Educational Plan ("IEP")was formulated for plaintiffto follow at McGavock. Plaintiffs' parents refused to approve the plan because Metro would not include football in the IEP as a "related service" under EHA.
 
 
 9
 The Crockers sought a due process hearing before the Tennessee Department of Education. Neither Carter nor TSSAA were made parties to the administrative action, nor were they permitted to participate. The administrative judge found that Crocker's handicap had motivated his transfer and that TSSAA's refusal to grant a hardship waiver amounted to discrimination under Sec. 504 of the Rehabilitation Act. He further ruled that Metro and the TSSAA must allow Crocker to participate in interscholastic athletics without threat of reprisal. He did not rule on whether participation in interscholastic athletics was a "related service," as defined by the EHA, that should have been incorporated into Crocker's IEP.
 
 
 10
 TSSAA indicated that it did not view the administrative judge's determination as binding and refused to change its position barring Crocker's participation in interscholastic athletics. McGavock's coach refused to permit Crocker to participate in a football game with another member school of TSSAA and sidelined him in the following week's game as well.
 
 
 11
 On October 18, 1989, Crocker filed this action in federal court, alleging that defendants were violating 42 U.S.C. Sec. 1983 by depriving him of rights under the EHA and Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794. He sought $1.5 million in compensatory and punitive damages, a temporary restraining order, and preliminary and permanent injunctive relief. Metro also sued in a separate action seeking, among other things, injunctive relief against TSSAA.
 
 
 12
 The district court granted a temporary restraining order and on November 2, 1989, issued preliminary injunctions in the two actions. The court issued two injunctions which were combined in one order: 1) in favor of plaintiffs Metro and Crocker enjoining defendant TSSAA from interfering with the implementation of the administrative judge's order allowing Crocker to participate in interscholastic sports and 2) in favor of plaintiff Metro's enjoining TSSAA from imposing sanctions on Metro or Michael Crocker for Metro's decision to play Crocker in interscholastic sports during the 1988-1989 school year.
 
 
 13
 On appeal, we found the question of Crocker's participation in interscholastic athletics to be moot. We upheld that part of the district court's order which precluded TSSAA from imposing sanctions. Crocker v. Tennessee Secondary Sch., Nos. 89-6450, 89-6451, slip op. (6th Cir. July 25, 1990).
 
 
 14
 On February 8, 1991, the district court granted plaintiff Metro a permanent injunction incorporating the relief granted in its earlier preliminary injunction prohibiting TSSAA from imposing sanctions against Metro or Crocker for Metro's decision to play Crocker during the 1988-1989 season.
 
 
 15
 On February 15, 1991, the parties filed cross-motions for summary judgment on plaintiff's claim for compensatory and punitive damages. The district court granted defendants' motion, concluding that Crocker had failed to show any deprivation of a federal right, and, accordingly, had failed to state a claim under Sec. 1983. The district court determined that Crocker did not acquire any right under the EHA at the administrative hearing because Judge Mulroy never reached the gravamen of [Crocker's] complaint: that interscholastic football was a related service under EHA that should have been included in Crocker's IEP. Finding no deprivation of federal right, the district court found it unnecessary to determine whether defendants acted under color of state law within the meaning of Sec. 1983. We affirmed. 980 F.2d at 382.
 
 
 16
 Plaintiffthen filed a motion for attorney fees seeking $40,926 for services rendered from the inception of the lawsuit through the decision of this court affirming in part and vacating in part the district court's injunction of November 2, 1989. Plaintiff explicitly indicated in its motion that "[n]o fees are sought for services performed in connection with the parties' cross-motions for summary judgment and the subsequent appeal from this Court's ruling on those motions." (App. at 161.)
 
 
 17
 The district court denied the motion for attorney fees, concluding that plaintiff was not a "prevailing party" under 42 U.S.C. Sec. 1988 in its Sec. 1983 action for deprivation of federal rights. Plaintiffappeals.
 
 II.
 
 18
 We review the district court's denial of plaintiff's motion for attorney fees under Sec. 1988 for abuse of discretion. See, e.g., Morscott, Inc. v. City of Cleveland, 936 F.2d 271 (6th Cir. 1991). Section 1988 authorizes attorney fees in pertinent part as follows: "Inany action or proceeding to enforce a provision of sections ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. Sec. 1988. Although plaintiff did not prevail on the merits of his Sec. 1983 claim, by obtaining a preliminary injunction, he argues that he is a prevailing party under Sec. 1988 and therefore he is entitled to related attorney fees. We conclude the district court did not abuse its discretion in determining that plaintiffis not a prevailing party under Sec. 1988.
 
 
 19
 Although the Supreme Court has not addressed this precise issue, precedent supports denial of fees in this case. In its recent decision, Farrar v. Hobby, 113 S. Ct. 566 (1992), the Supreme Court articulated the test for determining prevailing party status: "a plaintiff'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 573.
 
 
 20
 Relief on the merits implies that the ultimate finder of fact decides at least some substantive issue in favor of the plaintiff. In Hanrahan v. Hampton, 446 U.S. 754 (1980), the Supreme Court reversed an award of attorney fees for plaintiffs who successfully prevailed on appeal against directed verdicts for the defendants. The court noted that plaintiffs "of course" had not prevailed on the merits of any of their claims. Id. at 758. In dicta the court indicated that prevailing party status would obtain based on a favorable determination by the ultimate finder of fact: "The jury may or may not decide some or all of the issues in favor of the [plaintiffs.] If the jury should not do so on remand in these cases, it could not seriously be contended that the [plaintiffs] had prevailed." Id. at 759.
 
 
 21
 The district court indicated that in this case Crocker's preliminary injunctive relief was merely "illusory relief on the merits of his claim." (App. at 60.) Preliminary injunctive relief was not relief on the merits at all. See, e.g., Smith v. University of North Carolina, 632 F.2d 316, 347 (4th Cir. 1980) (grant of preliminary injunctive relief in sex discrimination case is not a determination on the merits but merely "a prognosis of probable or possible success[]" and does not elevate plaintiff to status of prevailing party when plaintiff fails to prove sex discrimination at trial). In this case, where plaintiff litigated his claim to its conclusion and did not prevail, plaintiff obtained no relief on the merits of his claim.
 
 
 22
 Plaintiff's reliance on cases dealing with the awarding of interim attorney fees is inapposite. Plaintiff relies on Webster v. Sowders, 846 F.2d 1032 (6th Cir. 1988), to support his claim that he is entitled to recover. Webster involved an application for interim fees based on preliminary injunctive relief, absent a determination on the merits. The court, in its interpretation of Supreme Court authority, indicated that fees would be appropriate for relief when "the preliminary relief obtained [represents] an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff." Id. at 1036. The district court issued an injunction against TSSAA, ordering it not to take action to prevent Crocker from participating in interscholastic athletics. In our view, this constituted "a maintenance of the status quo." Accord Zamlen v. City of Cleveland, 655 F. Supp. 1451, 1453-54 (N.D. Ohio 1987) (interim fee not appropriate when preliminary injunction enjoins defendants from alleged discriminatory behavior to maintain status quo until decision on merits can be reached).
 
 
 23
 This circuit has not determined whether attorney fees are available for obtaining preliminary injunctive relief in a Sec. 1983 action, despite an adverse determination on the merits. We have, however, denied fees under similar facts when Sec. 1988 fees were at issue. In Fiarman v. Western Publishing Co., 810 F.2d 85 (6th Cir. 1987), plaintiff sued her employer for sex discrimination in state court alleging a violation of the Michigan Elliott-Larsen Act. The state court, in a preliminary injunction, ordered plaintiff reinstated. The defendant removed based on diversity. Upon removal the district court entered judgment for the employer following a jury verdict. The court applied a two-part test developed under Sec. 1988 case law, which requires that a prevailing party must show "(1) her lawsuit was causally related to securing the relief obtained, and (2) there must be some minimum basis in law for the relief secured[,]" and found that plaintiff failed both prongs of the test. Id. at 86. Similarly, we reach the same conclusion in this case. We agree with the reasoning in Fiarman that "'[p]ut simply, ordinary conceptions of just returns reject the idea that a party who wrongly charges someone with violations of the law should be able to force that defendant to pay the costs of the wholly unsuccessful suit against it."' Id. at 87 (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983)).
 
 
 24
 We also note that one other district court has reached a conclusion similar to the one reached by the district court in this case. In Parks v. Grayton Park Associates, 531 F. Supp. 77 (E.D. Mich. 1982), the court denied plaintiff's motion for attorney fees under Sec. 1988. In that case, involving allegations of housing discrimination on the basis of race, plaintiffs had obtained a temporary restraining order and preliminary injunction enjoining the defendant landlord from renting its property to other applicants until plaintiffs had an opportunity to view it. The jury found that defendant's conduct was not racially motivated, however, and therefore found for defendants on the merits. The district court, relying on Hanrahan, denied plaintiffs' application for attorney fees, concluding that plaintiffs' relief had failed to vindicate any right since the jury determined that no rights had been violated. Id. at 79.
 
 
 25
 Plaintiffalso argues that, under the law of the case doctrine he is a prevailing party, having established that "the TSSAA's original imposition of the transfer rule violated his federal rights as a handicapped child" and "the TSSAA's action in the fall of 1989 'interfered' with 'rights guaranteed' to him by the EHA." Referring to the district court's decision granting a preliminary injunction enjoining TSSAA from applying the transfer rule to Crocker, Crocker relies on the district court's statement that "a student who transferred from one school to another for the purpose of receiving a free appropriate public education under the EHA could not be prohibited from participating in extracurricular activities, and that such a prohibition would amount to discrimination based on handicap." On appeal by TSSAA, we reversed on procedural grounds, holding that plaintiffhad failed to exhaust administrative remedies under the EHA, and therefore the district court action was premature. We dissolved the injunction and dismissed the action. During the subsequent administrative hearing, the ALJ held that TSSAA had discriminated against Crocker under a different law, the Rehabilitation Act. Crocker argues that the district court "acknowledged and embraced" the ALJ's decision in referencing those findings in its subsequent order granting Crocker a preliminary injunction. Plaintifffurther claims that this court "confirmed that the district court had properly utilized [the ALJ's] decision to make its own ruling." Finally, Crocker contends that the district court noted in its summary judgment that it had previously held "that the defendants had interfered with rights guaranteed to Michael pursuant to the EHA and prescribed by the due process hearing held by [the ALJ]", and that this court "recognized that the district court had so held." See 980 F.2d at 385-86 ("On November 2, 1989, the Court issued a preliminary injunction against Carter and the TSSAA, holding that the defendants had interfered with rights guaranteed to [Crocker] by the EHA and prescribed by the due process hearing held by [the ALJ]").
 
 
 26
 The district court's statements cannot be construed as the law of the case. First, in its original ruling regarding its comments about transfers by students for purposes of receiving an appropriate education under the EHA, the court did not determine at that time whether Crocker was such a student. Rather, the court noted that additional factfinding was required by the local educational agency, in this case, Metro, to determine why Crocker transferred schools. Second, the ALJ's determination that Crocker had been discriminated against under the Rehabilitation Act in no way binds TSSAA, which was not a party to that proceeding. See 980 F.2d at 386. Third, the district court's reference to the ALJ's findings in granting preliminary relief was solely for purposes of determining whether Crocker had demonstrated a substantial likelihood that he would prevail on his discrimination claim; it was not, of course, a determination on the merits, since the court subsequently ruled in favor of defendants in its summary judgment order.
 
 
 27
 The references to our opinions cited by Crocker in no way constitute an affirmance of any finding of discrimination against Crocker. First, we consistently have made clear that the ALJ's finding was not binding in this matter. Crocker v. Tennessee Secondary Sch. Athletic Ass'n, Nos. 89-6450; 89-6451, slip op. at 6 (6th Cir. July 2, 1990); 980 F.2d at 386. Second, the same opinion that Crocker relies on as "confirm[ing] that the district court had properly utilized Judge Mulroy's decision to make its own ruling," is an affirmance of the district court's granting of preliminary injunctions:
 
 
 28
 Clearly, Judge Mulroy's decision was not binding on the TSSAA or Carter because they were not parties to the administrative proceeding. We do not read Judge Nixon's order, however, as a mere enforcement of Judge Mulroy's decision. Rather, the District Court's order arose out of a separate proceeding, to which the TSSAA and Carter were made parties, and which decision was consistent with the prior decision by the District Court in this case.
 
 
 29
 Crocker, Nos. 89-6450; 89-6451, slip op. at 6. Again, the injunctive rulings, by their very nature, were not determinations on the merits of Crocker's claim but, rather, on the substantial likelihood that he would prevail. Crocker was never adjudicated to be handicapped in any action involving these parties.[2] Crocker's argument is therefore unavailing.
 
 
 30
 The only "relief" Crocker obtained that survived the granting of defendant's summary judgment motion was that granted to Metro prohibiting the imposition of sanctions. The fact that Crocker sought similar relief is not enough to counterbalance the singular fact that he failed to prevail on the merits.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 In 1990, this act was renamed the Individuals with Disabilities Education Act. See 20 U.S.C. Sec. 1400
 
 
 [2]
 Even if Crocker were adjudicated to be handicapped under the Act, it is not clear that he would satisfy the Act's independent requirement that he be an "otherwise qualified individual." We note that the Eighth Circuit recently reversed a preliminary injunction against an athletic association from (1) preventing a student from participating in interscholastic athletics when under the association's rules the student was too old to participate and (2) retaliating against schools for whom or against whom the student played, on the basis that the student, though handicapped, was not an "otherwise qualified individual." Pottgen v. Missouri State High Sch. Activities Ass'n, No. 94-2324, slip op. at , (8th Cir. Nov. 16, 1994). Under the Rehabilitation Act, an otherwise qualified student is one who is able to meet the essential requirements of a program in spite of his handicap or for whom reasonable accommodations would enable him to meet the essential requirement. Id. The Pottgen court noted the legitimate basis for barring older students from athletics as an essential eligibility requirement and found that to grant a waiver for the student would "constitute a fundamental alteration in the nature of the program" and therefore could not be viewed as simply a "reasonable accommodation." Id