Holly LONG, Plaintiff–Appellant,

v.

DAWSON SPRINGS INDEPENDENT SCHOOL DISTRICT, David Boggs, Commonwealth of Kentucky, and State Department of Education, Defendants–Appellees.

No. 05–5535.

United States Court of Appeals, Sixth Circuit.

Aug. 25, 2006.

Before: BOGGS, Chief Judge; SUTTON, Circuit Judge; and HOOD, District Judge.[1]

PER CURIAM.

Plaintiff Holly Long, who as a student in the mid–1990s was denied adequate special educational services by the Dawson

1. The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan.

Springs School District, appeals the district court's dismissal with prejudice of her claims, under 42 U.S.C. § 1983 and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* We affirm the ruling of the district court.

## I

Plaintiff Holly Long is learning impaired. It is agreed by all parties that she qualifies as a special education student under the IDEA. She enrolled in January 1992, in the Dawson Springs School system in Hopkins County, Kentucky. She was fourteen. Her family became dissatisfied with her education. On September 29, 1994, they sought a due process hearing pursuant to 20 U.S.C. § 1415(f), as implemented in 707 KAR 1:340, § 5–8, on the theory that Dawson Springs was not in compliance with its requirements under the IDEA. Long's family claimed, *inter alia,* that the school district had not implemented her individualized education program ("IEP"). The Department of Education appointed a hearing officer and scheduled a hearing for November 15, 1994. The Long family requested that the hearing be cancelled. The Department then dismissed the due process proceeding, and the Longs never asked that it be reopened.

Holly Long withdrew from the Dawson Spring Schools on December 7, 1994. Her family moved to Oldham County, where she enrolled in the public schools. She finished her twelfth year of education in 1998.

Her family filed a complaint on May 27, 1998, under the Department of Education's complaint resolution procedures authorized in Kentucky by KAR 1:340 § 15 (the complaint resolution procedure, or "CRP"). The CRP is an alternative approach to a due process hearing. The Long family's complaint sought further educational services for Holly Long. It alleged that Dawson Springs failed to implement her IEP between August 1991 and December 1994. The Department investigated and issued eight findings on September 2, 1998. Those findings were, in summary:

1) Dawson Springs did approve policies for the implementation of Holly Long's IEP. But it did not implement the IEP in a timely fashion. "Therefore, Dawson Springs failed to provide a free and appropriate education to Plaintiff."

2) The school district had placed Holly Long in the "least restricted environment ... and offered placement alternatives to the parent."

3) The school district "did not provide post-secondary transition planning for Plaintiff."

4) The school district "did not implement a system to monitor, collect and report progress data for any of the short-term instructional objectives set out in the IEP's from 1991 through 1994." Nor did it "ensure implementation of any IEP's as written during that period."

5) Dawson Springs did furnish a computer and printer for use by Holly Long at school, "evaluated [her] for assistive technology devices[,] and offered to provide the recommended assistive technology."

6) The school district "failed to provide a comprehensive framework or multi-year course of study, failed to determine whether Plaintiff was eligible for a diploma or certificate of completion, and failed to provide a graduation plan."

7) "Dawson Springs did not make an extended year program available and did not determine whether Plaintiff needed extended school year services."

8) "Plaintiff is entitled to compensatory services for the time she was denied a FAPE [free and appropriate public education], which was approximately three years. Dawson Springs was required to convene an ARC meeting [Admissions and Release Committee, discussed in 707 KAR 1:280]," which is charged with "developing, reviewing, or revising an additional education program (IEP) for a child with a disability." The school district was obligated to convene the ARC "as soon as it can be conveniently arranged, to discuss compensatory services for the time period Plaintiff was denied FAPE. Dawson Springs was required to submit documentation of this ARC meeting to the Division of Exceptional Children Services within ten days of the meeting."

Long did not appeal or seek review of the Department's conclusions, though she had the option to seek further review from the United States Department of Education under 34 C.F.R. § 300.661(d) (repealed in 1999). However, Dawson Springs does appear to have sought reconsideration of the Kentucky Department's findings. It is unclear what procedural basis the school district relied upon for this petition for reconsideration, but the further review did take place. The Department of Education issued a further opinion on the matter more than a year after its first one. The Department affirmed seven of the eight findings on September 28, 1999. However, with respect to number six, the Department wrote:

The September 2, 1998, report of findings determined the student was not provided FAPE during the period investigated. Therefore, the student is entitled to compensation for educational services not provided. The corrective action plan ("CAP") requires the district to convene an ARC meeting with the student to determine how, when, where and in what form the services will be provided. The district must submit to this office copies of the ARC meeting invitations as well as conference summary reports which describe the results of any ARC meetings held with the emancipated student by November 30, 1999.

In other words, the Department ordered that further documentation be provided before it could reach any ultimate conclusion on at least this portion of its decision.

Following the order of September 1999, Dawson Springs scheduled an ARC meeting. The Long family requested that a Department representative attend. The family asked also that the meeting be held in Frankfort. The Department declined to send a representative, noting it had no role to play in the ARC. The Long family expressed and exhibited unwillingness to meet with the school district's officials in the absence of a Departmental representative. The Longs and the school district entered into a relatively involved correspondence. In the course of that correspondence, Dawson Springs agreed to pay for two months of evaluative services by an organization called Career Services, Inc., which appears to be a general purpose employment opportunity entity. One of the services it provides is training assistance (chiefly employment training, apparently) to persons with special educational needs. The Long family indicated a desire to work with Career Services, and Dawson Springs offered to pay for two months of the company's time.

Dawson Springs sent Career Services a series of inquiries seeking information about Holly Long's education needs. After some delays, Career Visions answered the school district's questions, but it is unclear whether Career Visions transmitted a full and satisfactory version of its

answers to the school district. The reason for this confusion is that, as noted *infra,* a later meeting between the parties produced a set of terms, including the condition that Career Visions furnish the school district with answers to all of its questions. Dawson Springs scheduled an ARC. However, it appears that Dawson Springs had trouble reaching the Long family by telephone. This caused further delay. Then Holly Long's attorney resigned from the case. More delay ensued. David Boggs, Superintendent of the school district, sent a letter directly to the Long family on July 13, 2000, proposing settlement terms:

> Compensatory education through a written contract for computer education training with a company like Career Visions for up to a maximum of 104 weeks beginning July 1, 2000, consisting of two session for one and a half hours per session at a maximum of $75 per hour for training, $30 per hour for travel time and 31 cents per mile for travel to sessions.

Long's new lawyer declined these terms. The lawyer emphasized that the Department's findings obligated the school district to furnish education for the same amount of time a FAPE had been withheld. The parties disagreed, at this moment and throughout the litigation, on the length and nature of education time owed Long. Long enrolled in the school district on January 28, 1992. She departed December 7, 1994. After vacation time is deducted, that translates to roughly 100 weeks of school time, which comports with Dawson Spring's calculation that it owes 104 weeks of school time. By contrast, Long asserted that she was owed three and a half years of education.

The school district then scheduled another ARC. Both parties appeared at this ARC on September 20, 2000. They agreed that: 1) Career Visions would furnish Dawson Springs with complete answers to its questions, and 2) the school district would provide Long with the use of a computer. However, they continued to disagree as to the amount of education time the district owed Long.

Through counsel, the Long family wrote to the Department of Education on November 30, 2000, complaining about delays and the school district's offer. The Department reviewed the most recent proceedings and concluded that Dawson Springs, by and through holding the ARC meetings and making its offer to the Long family, had discharged its obligations under the departmental order of September 2, 1998. The Department's letter then noted that the Long parents could seek further recourse by following the complaint resolution or due process hearing procedures provided for by 707 KAR 1:340, §§ 5–8 and 34 C.F.R. Part 300.506–10. The letter concluded "[a]s you are aware, these procedures have to be exhausted prior to filing any type of civil action."

Long's lawyer replied by arguing that it was the Department's responsibility to take corrective steps in the case. In response, the Department issued a letter on February 8, 2001, stating that it considered the matter closed and informing the Long family again that they could seek a due process hearing.

The Long family and Dawson Springs met again on May 22, 2001, to discuss settlement terms. They did not reach an agreement.

Long filed the suit giving rise to our case on June 28, 2001. The next week, Dawson Springs asked Career Visions to provide services to Long under the terms of the November 17, 2000 ARC action plan. Career Visions replied by informing the school district that the Longs had declined to accept the services at that time.

The school district moved on September 14, 2001, to dismiss the complaint. The Department entered a similar motion on February 11, 2002.

The district court examined the case and determined that ill will between the parties had gotten in the way of successful resolution that would actually assist in the plaintiff's education. The court held a telephonic conference among the parties on May 21, 2002. On that call, the parties agreed to circulate the names of three professionals who would evaluate Holly Long. Observing the parties' good faith efforts, the district court denied without prejudice the parties' pending dispositive motions on July 26, 2002.

The parties eventually agreed that a professional named Dr. Deborah Bauder would be selected to recommend a program of services tailored to Long's needs. However, when Bauder sought to examine Long, her lawyer objected, stating that there was no need for further evaluation of the plaintiff. On May 9, 2003, the court held a further conference. The parties finally agreed on a program of services and assessments that would last up to three years. The court issued an order reflecting that agreement on May 20, 2003. At oral argument, it was agreed that three years of services had been furnished to Holly by May 2006.

Thereafter, Dawson Springs reimbursed Career Visions and related professionals who furnished the services to Holly Long. After some time, the court reviewed the services provided by Career Visions, as well as their progress report on the plaintiff. In an order of June 29, 2004, the court concluded that the delivery of the services was satisfactory and that the "promise of continuing those services could resolve all the disputes at issue."

Around this time, Career Visions suggested that Long's educational services be expanded to eight hours per week. The court adopted this recommendation on August 10, 2004. The court also asked the parties to resubmit their dispositive motions it had earlier denied. They did so.

On December 20, 2004, the court issued a memorandum opinion and order on the dispositive motions. The court considered Long's claim under the IDEA. The court noted that the plaintiff complained of two things: 1) the delay in providing her with compensatory education between September 28, 1999, and June 1, 2003 (the period between the Department's order following reconsideration and the district court's final order on furnishing the services), for which they sought compensatory money damages under the IDEA; and 2) the denial of her education between 1992 and 1994, for which they did not seek money damages. The court ruled temporarily that Long had no legal basis for her claim for monetary damages. It ruled further that there was no federal jurisdiction to hear Long's apparent appeal from the Department of Education's disposition in the CRP, because Long had never exhausted her administrative remedies under IDEA's provision for a due process hearing, which was the only administrative procedure for the assertion of federal jurisdiction under all relevant statutes and regulations. The court dismissed Long's IDEA and § 1983 claims with prejudice. The district court also ruled that, "so long as Dawson Springs continues to pay for the current level of education services provided by Career Visions (including transportation), it is in compliance with the Department of Education's final order dated September 28, 1999." This portion of the district court's opinion may be viewed as both an expression of good will and gratuitous, as the court correctly disposed of the case on grounds of exhaustion.

On February 4, 2005, the court made these orders final. They are now appealed.

## II

The IDEA requires that school districts receiving federal funding provide a "free and appropriate public education" ("FAPE") to all special education students. 20 U.S.C. § 1412; *Bd. of Ed. of Hendrick Hudson Central Sch. Dist., Westchester Cty., v. Rowley,* 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The IDEA establishes procedures by which school officials, parents, and the student can collaborate to create an IEP. 20 U.S.C. § 1401(11), 1414(d); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,* 471 U.S. 359, 368, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The IDEA also provides for administrative procedures to resolve disputes when the people involved in the creation of an IEP are not able to agree on its substance. 20 U.S.C. § 1415(b).

■ It is clear that the IDEA authorizes the award of funds to parents to reimburse them for expenses on special education that a school board should have, but did not, provide. *Town of Burlington,* 471 U.S. at 369–70, 105 S.Ct. 1996. However, in *Town of Burlington,* the Supreme Court appeared to suggest that money awards under IDEA should not be made as "damages." Our court read this case as holding that money damages are not available as a remedy for violations of IDEA. *Crocker v. Tennessee Secondary School Athletic Ass'n,* 980 F.2d 382, 386 (6th Cir.1992). Throughout this litigation, Long has criticized the *Crocker* decision in this particular. The *Crocker* holding is consistent with the view of other circuits on this question, however. *See Marta Diaz–Fonseca v. Commonwealth of Puerto Rico,* 451 F.3d 13 (1st Cir.2006); *Nieves–Mar-*

*quez v. Puerto Rico,* 353 F.3d 108, 124 (1st Cir.2003); *Polera v. Bd. of Educ.,* 288 F.3d 478, 485–86 (2nd Cir.2002); *Sellers v. Sch. Bd. of Mannassas, Va.,* 141 F.3d 524, 527 (4th Cir.1998); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.,* 98 F.3d 989 (7th Cir.1996); *Heidemann v. Rother,* 84 F.3d 1021, 1023 (8th Cir.1996); *Witte v. Clark Cty. Sch. Dist.,* 197 F.3d 1271, 1275 (9th Cir.1999). In any event, our panel is bound by the decision of the *Crocker* panel. *United States v. Yoon,* 398 F.3d 802, 806 (6th Cir.2005). No monetary damages may be awarded to the plaintiff in this case under the IDEA.

■ Long also seeks money damages under 42 U.S.C. § 1983. In *Gean v. Hattaway,* 330 F.3d 758 (6th Cir.2003), we affirmed the view we had taken in *Covington v. Knox County Sch. Sys.,* 205 F.3d 912 (6th Cir.2000) that IDEA claims "may be brought either directly under the IDEA's own provisions for dispute resolution, or, in some circumstances, under 42 U.S.C. § 1983." However, it appears that our court has not allowed plaintiffs to seek money damages for violations of the IDEA under § 1983. That is appropriate, as § 1983 does not permit us to recognize rights that are not specifically provided for in federal law. *See, e.g., Gardenhire v. Schubert,* 205 F.3d 303 (6th Cir.2000). The existence of express remedies in a statutory scheme demonstrates that Congress intended to supplant other remedies that might otherwise be available to complainants. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *see also City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 120, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005); *Blessing v. Freestone,* 520 U.S. 329, 342, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).

Long seeks in this litigation to have the Department's final 1999 administrative order enforced by the federal courts. The state has argued that the governing statutory framework does not provide for such enforcement. The state argues further that, before the federal courts could provide such a remedy, Long must first exhaust her administrative remedies.

The IDEA provides for two administrative procedures. The first is called the due process hearing. 20 U.S.C. § 1415(f), codified in 34 C.F.R. §§ 300.506–300.515, implemented in the State of Kentucky as 707 KAR 1:340 §§ 2–8 (West 2004). As noted *supra,* Long initiated her due process procedure against the school district in 1994. She also abandoned it almost immediately.

The second approach is the complaint resolution procedure, or CRP, authorized in 20 U.S.C. § 1221e–3, which provides for promulgation of the Education Department General Administrative Regulations ("EDGAR"). The regulations, which comprehend the CRP, were codified as 34 C.F.R. §§ 300.660–300.662 and implemented in the State of Kentucky as 707 KAR 1:340 § 15 (West 2004). In 1999, Long began a CRP. Our case is a lawsuit seeking relief from the remedy furnished in that CRP.

The due process hearing procedure contains certain safeguards not evident in the CRP. For example, § 1415(i)(e)(A) expressly authorizes an appeal in federal court. The state regulations that implement the hearing procedure reiterate this authorization. 707 KAR 1:340 § 8(2). There is no comparable federal or state statutory or implementing regulatory language that authorizes federal review of the outcome of the CRP procedure. Kentucky's CRP administrative regulations do refer to an appeal to the Commissioner of the Department of Education, but no more. 707 KAR 1:340 § 15(4).

The district court concluded "an appeal of the CRP final decision is unavailable here." The court made several further trenchant observations:

> Labeling this complaint an appeal from the CRP decision probably confuses already difficult issues. The Department's most important conclusions were that Dawson Springs had failed to provide a FAPE and that Plaintiff was entitled to compensatory services for an equal time period. Its order neither specified nor ordered specific compensatory services. It left that job to ARC meetings between the school district and the parents. Tellingly, Plaintiff has never expressed disagreement with any part of the Department's final order. Thus, it is not surprising that she never initiated an administrative appeal from any part of the Department's administrative findings or order.

In a footnote to this portion of its Memorandum Opinion, the district court recalled that "[b]oth the Department and this Court have determined that Dawson Springs has complied with [the Department's order]."

In an effort to disentangle the various components of the case, the district court contemplated the possibility that the "Longs' real aim may be to challenge the sufficiency of their daughter's current educational services." If this were the case, the district court wrote, the record available to it—and to our court—would not be sufficient for federal review. The plaintiff would first have to exhaust all available administrative remedies under the IDEA, including the due process hearing approach. This is correct. After all, the IDEA gives the "primary responsibility ... for choosing the educational method most suitable to the child's needs ... to state and local educational agencies in cooperation with the parents or guardian of

the child." *Hendrick Hudson,* 458 U.S. at 207, 102 S.Ct. 3034. The federal courts are not the entities best equipped to craft an IEP or remedial substitutes. They are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through due process hearings (the statutory provision for which also provides for federal appeal therefrom) under the IDEA. As the district court noted, "Plaintiff has not pursued her due process remedies either with respect to the 1992–1994 or the 1999–2003 time periods."

It is lamentable that, twelve years after the Long family first sought a due process hearing, which they subsequently abandoned, the parties remain in such an apparently intractably adversarial posture. Holly has received educational services that might be said to discharge the school district's obligations under the Departmental order. But it can only be speculated what she would have received had the Long family not abandoned the federally appealable administrative procedure.

Long also claims violations under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d); Title IX of the Educational Amendments of 1972; Section 504 of the Rehabilitation Act of 1973; and Title II of the Americans with Disabilities Act of 1990. In 1985, Congress amended the IDEA to include a provision stating that "before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required if the action had been brought under this subchapter." 20 U.S.C. § 1415(*l*); *see also* Pub.L. No. 99–372, 100 Stat. 796 (1986); S.Rep. No. 99–112 at 2 (1985), reprinted in 1986 U.S.C.C.A.N. 1798, 1799. Subsection (f) provides for the due process hearing under IDEA.

■ The exhaustion requirement applies to this case. Our court has not yet made this requirement explicit for all cases that involve IDEA claims, but our sister circuits have done so, especially where the plaintiff's claims related directly to his or her access to a FAPE. *See, e.g., Frazier v. Fairhaven Sch. Committee,* 276 F.3d 52 (1st Cir.2002); *Polera,* 288 F.3d 478; *Robb v. Bethel Sch. Dist. # 403,* 308 F.3d 1047 (9th Cir.2002); *Cudjoe v. Ind. Sch. Dist. No. 12,* 297 F.3d 1058 (10th Cir.2002); *Charlie F. v. Board of Educ. of Skokie School Dist. 68,* 98 F.3d 989 (7th Cir.1996). Based on the plain language of the IDEA amendment, which itself is sufficient, and upon the interpretation of this amendment by our sister circuits as it applies to a case such as ours, we conclude that Long must first exhaust her administrative procedure before suing in federal court.

### III

We affirm the district court's judgment dismissing this action for lack of exhaustion. The parties agreed at oral argument that the Long family may still seek a due process hearing, pursuant to 707 KAR 1:340 § 5.