**WAYNE COUNTY REGIONAL EDUCATIONAL SERVICE AGENCY, Detroit Public Schools, and Detroit Public Schools Board of Education, Plaintiffs,**

v.

**Nicholas PAPPAS and Davida Pappas, on behalf of their son, Nicholas Pappas, Defendants.**

No. Civ.A. 99–40011.

United States District Court,
E.D. Michigan,
Southern Division.

July 14, 1999.

Michael L. Bevins, Lansing, MI, for plaintiffs.

Richard J. Landau, Dykema Gossett, Ann Arbor, MI, for Nicholas Pappas, Davida Pappas, defendants.

***MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO REVIEW STATE HEARING OFFICER'S DECISION BASED ON CLOSED RECORD, DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND GRANTING PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS***

GADOLA, District Judge.

This is an appeal from an administrative decision rendered by the state review officer of the Michigan Department of Education. Presently before the Court are three motions. On May 21, 1999, plaintiff Wayne County Regional Educational Service Agency (RESA), filed a motion for summary judgment and to dismiss counterclaims.[1] Defendants Nicholas Pappas

---

1. On June 16, 1999 plaintiffs Detroit Public Schools and Detroit Public Schools Board of Education filed their joinder and concurrence in plaintiff Wayne County RESA's motion for summary judgment and to dismiss counterclaims. These plaintiffs also have joined in Wayne County RESA's response to defendants' motion to review state hearing officer's decision.

and Davida Pappas, on behalf of their son, Nicholas Pappas, responded on June 10, 1999. A reply brief was submitted by plaintiff Wayne County RESA on June 17, 1999. Also filed on May 21, 1999 was defendants' motion to review state hearing officer's decision based on closed record. Plaintiff Wayne County RESA filed a response to defendants' motion on June 11, 1999. A reply brief was filed by defendants on June 18, 1999.

For the reasons discussed below, the Court will construe plaintiffs' summary judgment motion as a motion for judgment on the pleadings seeking reversal of the administrative decision of the state review officer. Similarly, defendants' motion to review state hearing officer's decision will be construed as a motion for judgment on the pleadings seeking affirmance of the administrative decision of the state review officer. As more fully discussed herein, this Court finds the state hearing officer's decision relating to Nicholas Pappas' entitlement to compensatory education, among other issues, to have been properly decided consistent with the provisions of the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1400, et seq. Accordingly, the administrative decision appealed from will be affirmed. In addition, plaintiffs' motion to dismiss defendants' three counterclaims will be granted, as discussed *infra.*

## I. PROCEDURAL HISTORY

The procedural history outlined immediately below is taken in part from this Court's prior memorandum opinion and order issued June 11, 1999 granting plaintiffs' motion to terminate "stay-put" placement.

Defendant Nicholas Pappas, born on September 7, 1969, is now a 29 year-old person with severe mental impairment.

He is and was at all times relevant to the instant action a resident of the Detroit Public Schools district.

In 1974, defendant Pappas began receiving special education and related services after an Educational Planning and Placement Committee (EPPC) meeting determined that he was "severely multiply handicapped" (a condition identified by the term "SXI"). The committee recommended that he be placed in a program for the SXI for a minimum of 230 days of instruction per school year. However, instead of placing defendant in the program designated by the EPPC, he was placed in an alternate program for the severely mentally impaired with a minimum of 180 days of instruction per school year. *See* Decision of State Hearing Officer issued Dec. 4, 1998, p. 15. This allegedly unlawful placement persisted until December 14, 1979. *See id.,* p. 23.

In 1996, defendant Pappas reached an age, 26, in which he would ordinarily not be entitled to special education services pursuant to the applicable state statute, M.C.L. §§ 380.1701–380.1766. On August 26, 1996, plaintiff Detroit Public Schools held an individualized educational planning committee (IEPC) meeting consisting of school personnel and the defendant's parents. At the meeting, defendant's parents requested continuation of services as "compensatory education" for the alleged deprivation of services between 1974 and 1979. Plaintiff Detroit Public Schools refused and recommended termination of special education and related services because defendant was then 26 years of age and allegedly no longer eligible for services.

Nicholas Pappas' parents then instituted administrative proceedings pursuant to the IDEA, 20 U.S.C. § 1400, et seq., and the Michigan Mandatory Special Education Act (MMSEA), M.C.L. §§ 380.1701–1766.[2]

---

**2.** Pursuant to 20 U.S.C. § 1415, if a parent disagrees with an individualized educational plan (IEP), he or she "shall have an opportunity for an impartial due process hearing which shall be conducted by the State edu-

cational agency or by the local educational agency or intermediate educational unit" to contest the IEP. *See* 20 U.S.C. § 1415(b)(2). As mentioned *infra,* this Court has dismissed Count II of plaintiffs' complaint relating to

As a result, a due process hearing was conducted under the auspices of the local hearing officer. The due process hearing commenced October 14, 1997.

On October 14, 1997, the local hearing officer ordered a two-day per week placement in compliance with the statutory "stay-put" provision. According to plaintiffs, "[t]he parent rejected the five-day a week placement and requested a two-day a week placement." *See* Plaintiff's Brief in Support of Motion for Order to Terminate Stay–Put Placement, p. 2.

On October 29, 1997, Mr. Pappas's parents moved to join plaintiff Wayne County RESA as a party in the due process hearing. The hearing officer granted the parents' motion and plaintiff Wayne County RESA was joined as a party by order dated January 30, 1998.

The due process hearing concluded May 11, 1998 and a written decision was issued by the hearing officer on August 7, 1998. In that decision, the hearing officer granted Detroit Public School's motion to dismiss and denied the parents' request for compensatory education for their son, Nicholas Pappas. The stay-put order was continued pending appeal.

The parents then requested state review of the hearing officer's decision. On September 18, 1998, Detroit Public Schools and Wayne County RESA filed a motion with the state review officer to terminate the stay-put order of the local hearing officer. In a decision issued November 2, 1998, the state review officer denied this motion on the basis that Detroit Public Schools had offered a stay-put placement which had been accepted by the parents and thus there was an agreement for "stay-put" as a matter of law. Detroit Public Schools and Wayne County RESA subsequently moved for reconsideration of the November 2, 1998 decision.

the Michigan Mandatory Special Education Act (MMSEA), M.C.L. §§ 380.1701–380.1766.

On December 4, 1998, the state review officer denied the motion for reconsideration of the November 2, 1998 order regarding stay-put placement. *See* Decision of State Hearing Officer issued Dec. 4, 1998, p. 6. In the December 4, 1998 decision, the state review officer also *reversed* the decision of the local hearing officer, finding that Mr. Pappas had indeed been denied special education services to which he had been entitled during the period 1974 to 1979. *See id.*, p. 25. The state review officer then ordered Detroit Public Schools and Wayne County RESA to jointly provide 250 days of compensatory education to defendant Pappas. *See id.*, pp. 40–41. In addition, the order specified that the days of education which defendant was then receiving from Detroit Public Schools under the stay-put order were to be counted towards the 250 school day total for compensatory education. *See id.*, p. 45.

Plaintiffs Wayne County RESA, Detroit Public Schools and Detroit Public Schools Board of Education initiated the instant action with the filing of their two-count complaint on January 15, 1999. Plaintiffs seek review of the administrative decision issued by the state review officer pursuant to IDEA, 20 U.S.C. § 1415(i)(2)(A) (Count I) and MMSEA, M.C.L. §§ 380.1701–1766 (Count II). In an order entered February 3, 1999, this Court exercised its discretionary authority to hear pendent state law claims, and dismissed Count II. As a consequence, it is important to note that plaintiffs' only remaining claim is contained in Count I and relates to IDEA, 20 U.S.C. § 1415.

On February 25, 1999, defendants filed their answer, affirmative defenses, and counterclaims, containing three counts against plaintiffs/counter-defendants. Counterclaim I alleges a federal law violation of the IDEA. Counterclaim II alleges a federal law violation of Section 504 of the Rehabilitation Act of 1973. Counterclaim

*See* order issued February 3, 1999.

III alleges a federal civil rights violation pursuant to 42 U.S.C. § 1983.

On June 11, 1999, this Court issued a memorandum opinion and order granting plaintiffs' motion to terminate Nicholas Pappas's "stay-put" placement.

## II. STANDARD OF REVIEW

■ In cases brought pursuant to the IDEA, the district court is required to use a "modified *de novo* " standard of review in evaluating state administrative determinations. *Doe v. Metropolitan Nashville Pub. Sch.*, 133 F.3d 384, 386 (6th Cir.1998) (citing *Doe v. Board of Educ.*, 9 F.3d 455, 458 (6th Cir.1993) and applying *Board of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050–51, 73 L.Ed.2d 690 (1982)). According to the Sixth Circuit, "this means that the district court should perform a *de novo* review, but it 'should give due weight to the state administrative proceedings in reaching its decision.' " *Id.* (quoting *Roncker ex rel. Roncker v. Walter*, 700 F.2d 1058, 1062 (6th Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983)). The Supreme Court has warned courts against substituting "their own notions of sound educational policy for those of the school authorities which they review." *Id.* (citing *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034). The "due weight" requirement is derived from " '[t]he fact that § 1415(e) requires that the reviewing court receive the records of the [state] administrative proceedings....' " *Id.* (citing *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051 and quoting 20 U.S.C. § 1415(e)).[3]

The Sixth Circuit has recognized the difficulties in applying the "due weight"

standard. *See Metropolitan Nashville Pub. Sch.*, 133 F.3d at 386; *see also Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1000–01 (4th Cir.1997) (holding that "[a]dministrative findings in an IDEA case 'are entitled to be considered prima facie correct,' and 'the district court, if it is not going to follow them, is required to explain why it does not.' "); *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 989–90 (1st Cir.1990) (holding that "the court must render ... a 'bounded, independent decision[ ]—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court.' "). It is clear, however, that "due weight" means at the very least that the district court conduct an "independent reexamination of the evidence." *Metropolitan Nashville Pub. Sch.*, 133 F.3d at 386.

The IDEA mandates that the reviewing court is to receive the records of the administrative proceedings serving as the basis of the appeal. *See* 20 U.S.C. § 1415(i)(2)(b)(i). Upon request of either party, however, the court is empowered to hear additional evidence. *See* 20 U.S.C. § 1415(i)(2)(b)(ii). In the case at bar, neither party has proffered any "additional evidence" in support of their respective dispositive motions.[4] As a consequence, this Court's decision will be based upon a closed administrative record.

■ In the past, where there was such a "closed record" in an IDEA case, one or both parties would move for summary judgment pursuant to Rule 56 of the Federal Rules of Evidence. However, the

---

3. Other circuit courts of appeals have stressed the distinction between review of questions of fact versus question of law. *See Carlisle Area Sch. Dist. v. Scott*, 62 F.3d 520, 528 (3d Cir. 1995). For instance, the Third Circuit while acknowledging that deference was to be afforded administrative fact-finding also stated that "[o]bviously conclusions of law receive plenary review." *Id.* at 528 n. 3. Similarly, the First Circuit has held that "[l]egal rulings are subject to de novo review.... An administrative hearing officer's rulings of law ... are

not entitled to deferential review." *Milford Sch. Dist. v. William F.*, 129 F.3d 1252, 1997 WL 696108, *2 (1st Cir.1997) (table text).

4. There is agreement between the parties that neither side has requested that this Court hear additional evidence. *See* plaintiff Wayne RESA's brief in support of response to defendants' motion, p. 1; *see also* defendants' brief in support of motion to review state hearing officer's decision, p. 6.

Sixth Circuit has recently expressed disfavor regarding this practice:

If neither party had expressed a desire to put on evidence beyond that in the administrative record, as allowed by § 20 U.S.C. 1415(e)(2), the district court could have decided this case at the same stage in the proceedings, but such a decision would not have been summary judgment. Summary judgment requires that there be no disputed issues of material fact; that the facts be viewed in the light most favorable to the non-movant; and that the movant be entitled to a judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Therefore, we disagree with the Ninth Circuit, which has said that when no party has requested the hearing of additional evidence, a motion for summary judgment is an appropriate way to bring about a regular appeal, with a regular preponderance standard. *See Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 892 (9th Cir.1995) ("Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination."); *see also Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1472 (9th Cir.1993) (treating summary judgment motion as bench trial based on stipulated record). The *Capistrano* court wondered "what else the district court could do as a practical matter" *Id.* It is true that a district court in that situation would have nothing to do other than to decide the case based on the record. The distinction between a review of the ALJ's decision on a closed record and summary judgment is substantive—a very different standard is applied—rather than merely procedural. There is no good reason, however, to confuse matters by allowing this to be called summary judgment.

*Metropolitan Nashville,* 133 F.3d at 387 n. 2.

In keeping with the Sixth Circuit case law, it is clear that summary judgment pursuant to Rule 56 is not the appropriate procedure to be employed at this stage of the litigation. Instead, the Court will construe plaintiffs' motion for summary judgment as a motion for judgment on the pleadings seeking reversal of the administrative decision of the state review officer. Likewise, defendants' motion to review state hearing officer's decision based on closed record will be construed as a motion for judgment on the pleadings seeking affirmance of the administrative decision of the state review officer.

Rather than applying the summary judgment standard of Rule 56, requiring no genuine issue of material fact and viewing all facts in a light most favorable to the non-movant, this Court will ascertain the correctness of the state review officer's decision through application of the "preponderance of the evidence" standard. *Id.* at 386; *see also* 20 U.S.C. § 1415(i)(2)(b)(iii) ("[i]n any action brought under this paragraph, the court . . . [shall base] its decision on the preponderance of the evidence [and] grant such relief as the court determines is appropriate"). The state review officer's legal conclusions will be reviewed *de novo.* Finally, insofar as defendants' counterclaims involve issues lying outside the IDEA, this Court will apply Federal Rule of Civil Procedure 12(b)(6) in deciding whether to dismiss for failure to state a claim upon which relief can be granted.

## III. ANALYSIS

In the prior administrative decision, the state review officer made the following principal determinations: (1) that plaintiff Wayne County RESA violated the IDEA during the 1970s by failing to place Nicholas Pappas in the program recommended by his Education Planning and Placement Committee (EPPC); (2) that Nicholas Pappas had not yet been provided with compensatory education for that depriva-

tion; (3) that Nicholas Pappas was entitled to compensatory education consisting of 250 days of instruction as a remedy for the five years (1974–1979) in which he was deprived of 50 days per year of instruction; (4) that the statute of limitations of three years was *tolled* due to Nicholas Pappas' severe mental disability; and (5) that Nicholas Pappas' claim for compensatory education under the IDEA was *not* barred by the equitable doctrine of laches.[5]

Before examining these rulings, it is important to note that plaintiffs *have waived* their right to dispute any of the factual findings of the state review officer.[6] *See* Plaintiff Wayne County RESA's Brief in Support of Response to Defendants' Motion, p. 1. As plaintiff Wayne County RESA states in its responsive brief, "[w]hile plaintiff does not believe that all of the review officer's findings of fact are accurate, it has not sought review of those findings and, therefore, for purposes of this proceeding, does not contest the finding that during the 1970s Nicholas [Pappas] was denied certain special education services to which he was entitled." *Id.* Plaintiff further asserts that "[t]he dispositive issue in this case is whether defendants' claim under the IDEA against Wayne RESA is barred by the statute of limitations." *Id.*, p. 2. As a consequence, this Court is concerned with reviewing the legal and not the factual conclusions of the state review officer.

Since plaintiffs do not contest that Nicholas Pappas was denied certain special education services to which he was entitled, the issue before this Court is a legal one: whether denial of such services constituted a violation the IDEA. Defendants argue that the IDEA clearly provides that students over the age of 21 who have been deprived of their rights under the IDEA in prior years are *entitled* to compensatory education as remedy. *See Bd. of Ed. of Oak Park v. Il. State Bd. of Ed.*, 79 F.3d 654, 660 (7th Cir.1996) (Posner, J.); *Pihl v. Mass. Dept. of Educ.*, 9 F.3d 184 (1st Cir.1993); *Lester H. v. Gilhool*, 916 F.2d 865, 872 (3d Cir.1990). According to defendants, the state hearing officer's decision to award Mr. Pappas 50 school days for each of the five years between 1974 and 1979 was reasonable. This determination was premised on the fact that the student had received 180 days per year during the time period in question, but subsequently was found to have been entitled to 230 days per year, resulting in a difference of 50 days per year.

Defendants further maintain that the state review officer was correct in concluding that the student had not already received compensatory education due and owing to him. According to defendants, although Detroit Public Schools (DPS) chose to provide Mr. Pappas and six other similarly situated students with a program which *exceeded* the requisite 230 days and 1050 clock hours mandated by state regulation, this extra time was *not compensatory* because these hours were provided to all similarly situated students. *See* Deci-

---

5. It should be noted that with respect to certain other issues the state hearing officer ruled in favor of plaintiffs herein. It was held that even though Detroit Public Schools (DPS) had violated the IDEA by not timely convening a hearing when one was requested by the parents, there was no injury to defendants from the delay. Thus, no compensatory damages were owing for that period. Further, the state hearing officer rejected defendants' contention that they were misled by DPS officials which caused delay of their claim for compensatory education under the IDEA. Defendants point out that they have not appealed these rulings. *See* defendants' brief in support of motion to review state hearing officer's decision, p. 5, n. 5.

6. As mentioned previously, plaintiffs Detroit Public Schools and Detroit Public Schools Board of Education have joined in plaintiff Wayne County RESA's motion for summary judgment and to dismiss counterclaims. These plaintiffs also have joined in Wayne County RESA's response to defendants' motion to review state hearing officer's decision. Accordingly, they too have waived the right to dispute any of the factual findings of the state review officer.

sion of State Hearing Officer issued Dec. 4, 1998, p. 26.

Plaintiffs have chosen to not directly dispute the substantive ruling of the state review officer relating to his legal conclusion that Wayne County RESA violated the IDEA. Instead, in their motion for summary judgment and in their response to defendants' motion, plaintiffs concentrate exclusively on attacking the conclusion that the statute of limitations has been tolled due to Nicholas Pappas' mental condition. Plaintiffs offer no reasons aimed at calling into question the state review officer's substantive finding that Wayne County RESA violated the IDEA during the period 1974 to 1979.

The Seventh Circuit, in *Oak Park, supra*, interpreted the IDEA as allowing for the provision of compensatory education, even to individuals who had surpassed 21 years of age, the age of entitlement under the Act. In the words of Judge Posner,

> [a]lthough the Act entitles disabled individuals to special educational assistance only until they reach the age of 21, a number of courts have held that if the assistance is inadequate ... the individual may be awarded, in order to cure the inadequacy, additional special assistance after he reaches the age of 21. The Act does not say so. The only specific remedies that it mentions are attorneys' fees and interim relief (see below). But it authorizes the court to "grant such relief as the court determines is appropriate," § 20 U.S.C. 1415(e)(2), and these courts have assumed, consistent with the Supreme Court's generous reading of the provision in *School Comm. of Town of Burlington v. Department of Education*, 471 U.S. 359, 369–70, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985), that this authorization encompasses the full range of equitable remedies and therefore empowers a court to order adult compensatory education if necessary to cure a violation. *Parents of Student W. v. Puyallup School District*, 31 F.3d 1489, 1497 (9th Cir.1994); *Pihl v. Massachu-*

*setts Dept. of Education*, 9 F.3d 184, 187–89 (1st Cir.1993). This is surely correct in light of the *Burlington* case, and while we treated the issue as an open one in *Timms v. Metropolitan School District*, 722 F.2d 1310, 1314–16 (7th Cir.1983), that was before *Burlington*. The defendants do not question the propriety of such relief.

*Oak Park*, 79 F.3d at 656.

■ The Seventh Circuit's ruling in *Oak Park*, as well as the cases cited therein, leave no doubt that compensatory education was an appropriate remedy. Therefore, assuming *arguendo* that the IDEA applies in the present case and its application is not barred for some other reason, such as operation of the statute of limitations or laches, the state review officer's decision will be affirmed as consistent under the IDEA.

## A. Plaintiff Wayne County RESA's standing to challenge award of compensatory education.

■ As a preliminary matter, defendants argue that plaintiff Wayne County RESA lacks standing to challenge the award of compensatory education to Nicholas Pappas. According to defendants, this plaintiff has failed to satisfy Article III's standing requirement of alleging an "injury in fact," i.e., a distinct and palpable injury which is actual or imminent and not conjectural or hypothetical. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Defendants maintain that plaintiff Wayne County RESA has suffered no injury because "[i]t is Plaintiff DPS, not Wayne County RESA, which is spending money and other resources to provide compensatory education to Nicky. ... the compensatory education which Nicky is currently receiving is costing Wayne County RESA absolutely nothing." Defendants' Brief in Response to Plaintiff's Motion, p. 7–8.

Plaintiff Wayne County RESA counters that it does have standing pursuant to the

terms of the state review officer's order previously entered on December 4, 1998. Pursuant to that order both Wayne County RESA and Detroit DPS were held jointly liable to provide the award of compensatory education to Nicholas Pappas. *See* Decision of State Hearing Officer, pp. 42 and 45. Moreover, plaintiff Wayne RESA asserts that in fact it is "bearing the bulk of the costs of providing compensatory education." Plaintiff's Reply Brief in Support of Motion for Summary Judgment, p. 1. In addition, plaintiff has proffered the affidavit of Kathryn Mathey, Director of Special Education for Wayne County RESA, setting forth the actual costs of the Mr. Pappas' program. See Affidavit of Kathryn Mathey, attached to Plaintiff's Reply Brief in Support of Motion for Summary Judgment.

In light of the holding of joint liability on the part of the state review officer, as well as plaintiff Wayne County RESA's allegation and supporting affidavit that it is in fact paying for most of the costs of Mr. Pappas' compensatory education, this Court holds that this plaintiff has suffered a cognizable "injury in fact." Plaintiff is entitled to challenge the state review officers' decision.

### B. The Statute of Limitations Issue

The Court will now turn to the crucial issue raised by plaintiffs: whether defendants' claim is precluded by operation of the statute of limitations. Defendants argue that the statute of limitations was tolled due to Nicholas Pappas' severe mental retardation. Plaintiffs, on the other hand, maintain that the statute of limitations has not been tolled.

■ At the outset, the Court notes that the IDEA has no specific provision imposing a limitation on time to file an action. As a result, courts must borrow the general state law statute of limitations relating to suits for injury to a person or property

brought against states and their agencies. *See Lawson v. Edwardsburg,* 751 F.Supp. 1257, 1259 (W.D.Mich.1990) ("[i]f a federal statute does not contain a limitations period, then a court is to determine which state cause of action is most analogous to the federal one and adopt its statute of limitations if it is consistent with the policy of the federal cause of action"). Pursuant to Mich.Comp.Laws § 600.5805(8), the statute of limitations for "injury to a person or property" is three years.[7] In the context of the IDEA, "[w]hen a state statute is borrowed ... the federal court will also borrow the state rules on tolling." *Shook v. Gaston Co. Bd. of Ed.,* 882 F.2d 119, 121 (4th Cir.1989), *cert. denied,* 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1069 (1990) (citing *Board of Regents v. Tomanio,* 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–96, 64 L.Ed.2d 440 (1980)); *see also Hickey v. Irving Ind. Sch. Dist.,* 976 F.2d 980, 983 (5th Cir.1992).

■ Michigan law provides that statutes of limitations shall be tolled in cases of insanity. The term "insanity" is defined by statute as "a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane." Mich.Comp.Laws § 600.5851(2); *see Paavola v. St. Joseph Hosp. Corp.,* 119 Mich. App. 10, 325 N.W.2d 609 (1982) (finding of insanity not dependent on whether person has been judicially declared insane). Under Michigan law, it is well-settled that an individual with a mental disability is the beneficiary of the tolling statute even where his rights have been capably handled by a guardian or an attorney. *Calladine v. Dana Corp.,* 679 F.Supp. 700, 702 (E.D.Mich.1988). A person falling within the statute's definition of insanity shall have "1 year after the disability is removed

---

7. Mich.Comp.Laws § 600.5805(8) provides that "[t]he period of limitations is 3 years after the time of the death or injury for ...

actions to recover damages for the death of a person, or for injury to a person or property."

through death or otherwise, to make the entry or bring the action although the period of limitations has run." Mich. Comp.Laws § 600.5851(1).

■ In the present case, the Court finds that Nicholas Pappas' condition satisfies the rather expansive definition of "insane," as that term is defined in Mich.Comp.Laws § 600.5851(2). Plaintiffs' assertion that tolling does not apply hinges on their contention that the IDEA, although admittedly designed to protect the child, in actuality affords various rights to the parents and/or guardian of the child. Thus, according to plaintiffs, the tolling statute is not triggered by the disability of the child alone. The Court is not persuaded by this argument.

Although courts have disagreed on this issue, it is clear that state tolling statutes may be applied in cases involving educational services owed to the severely mentally retarded under the IDEA. For example, in the recent decision of *McKellar v. Pa. Dept. of Ed.*, 1999 WL 124381 (E.D.Pa. Feb. 23, 1999), the court considered a challenge to the plaintiff's educational disability claims on the ground that they were time-barred under the applicable Pennsylvania statute of limitations. *Id.* at *4. The court concluded that the tolling statute *should be* applied, reasoning that plaintiff's claims could be brought because he was under the age of 18 at the time the law suit was brought. *Id.* In addition, however, it was acknowledged that any related claims which belonged solely to the parents could not be tolled under the statute. *Id.*

Defendants' position is supported by *Shook v. Gaston Co. Bd. of Ed., supra,* wherein the Fourth Circuit found that when a state statute is borrowed, the federal court will also borrow the state rules on tolling. This proposition is further supported by the U.S. Supreme Court's decision in *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), wherein the Court held that state tolling rules were to be applied except when "inconsistent with the federal policy

underlying the cause of action under consideration." *Id.* at 485, 100 S.Ct. 1790 (internal quotes omitted). In *Shook,* the appellate court acknowledged that other courts have been reluctant to apply tolling in the context of the IDEA, but nevertheless expressed disagreement with these decisions. As the Fourth Circuit stated,

> [t]he case of *Alexopulos v. San Francisco Unified School District,* 817 F.2d 551 (9th Cir.1987), is to the contrary on the point that the statute of limitations is tolled in such cases. While that court recognized that state statutes of limitations, when borrowed, usually carry with them state tolling provisions, it found that the application of the tolling provision would be contrary to a federal policy that representatives of educationally handicapped children promptly assert the child's educational rights. *We simply do not agree.* We agree with the statement of the Second Circuit in *Vander Malle v. Ambach,* 673 F.2d 49, 52 (2d Cir.1982), that such a suit is properly maintained both by the child and its parents. That being true, the exercise of a state tolling provision in favor of the child should not deter the parents from bringing a suit at an earlier time.

*Id.* at 121 n. 2 (emphasis added).

From the case law discussed above, it is apparent that the question in the instant case thus becomes whether Michigan's tolling statute is "inconsistent with the federal policy underlying" the IDEA. This Court is in agreement with the Fourth Circuit's reasoning in *Shook* that an action under the IDEA is properly construed as one brought by *both* the child and his or her parents. As such, it would be illogical to disregard the status of the child in making the tolling determination.

Moreover, applying the tolling provision in the case at hand does not run contrary to the principles of the IDEA. Although the IDEA calls for prompt resolution of issues regarding the education of disabled individuals, the reason for such prompt

resolution is that delay would "work to the detriment of disabled students by leaving unresolved the course of the educational programs." *Smith v. Special Sch. Dist. No. 1,* 24 IDELR 1003, 1008 (D.Minn. 1996). The reason for the "prompt resolution" is not for the benefit of the public agency but rather for the protection of the disabled child.

As an additional point, application of the tolling statute in IDEA cases should not be foreclosed due to prudential concerns. Allowing invocation of the tolling statute would *not* result in opening the floodgates of stale cases. This is because, as defendants point out, the tolling statute applies *only* to persons who are *severely* mentally impaired. The vast majority of students, including children with minor learning disabilities, may not take advantage of the provision of Mich.Comp.Laws § 600.5851. Plaintiffs' argument to the contrary ignores the factual finding of the state review officer that "in Michigan there are only a total of twelve to eighteen Due Process Hearings actually held each year. This tolling statute would only apply to a very small number of disabled students...." Decision of State Hearing Officer issued Dec. 4, 1998, p. 35.

Accordingly, this Court will affirm the state review officer's legal determination that the Michigan tolling statute, Mich. Comp.Laws § 600.5851, is applicable in the case at bar. The statute of limitations does not bar defendants' claim for compensatory education pursuant to the IDEA.

### C. Whether Nicholas Pappas' claim for compensatory education under the IDEA is barred by the equitable doctrine of laches.

Plaintiffs argued in the administrative proceedings below that Nicholas Pappas' claim for compensatory education was barred by the equitable doctrine of laches. The state review officer rejected this argument. The officer found that the school district had not suffered any actual prejudice by the delay in bringing the claim for compensatory education. *See* Decision of State Hearing Officer issued Dec. 4, 1998, p. 29.

There is a "strong presumption" that laches will not apply where the analogous statute of limitations has not run. In the instant case, as this Court has already held, the statute of limitations has not run because it has been tolled due to Nicholas Pappas' severe mental retardation. Furthermore, as duly noted by the state review officer, a party invoking the equitable doctrine of laches must make a showing of adequate prejudice caused by the delay in bringing suit. *See Lothian v. Detroit,* 414 Mich. 160, 168, 324 N.W.2d 9 (1982). As mentioned, the state review officer made a factual finding that there was no such prejudice in the instant case.

Since, as discussed previously, plaintiffs have expressly stated that they do not dispute any of the factual findings of the state review officer, this Court will accept as true the officer's finding that plaintiffs herein suffered no prejudice as a result of the delay. Without a showing of prejudice, plaintiffs' laches argument must fail. Accordingly, the Court will uphold the state review officer's legal conclusion that this equitable doctrine likewise does not operate to bar Mr. Pappas' claim.

### D. Defendants' Counterclaims

Defendants have also asserted three counterclaims against plaintiffs, alleging in Count I a violation of the IDEA and seeking compensatory education and punitive damages, alleging in Count II a violation of Section 504 of the Rehabilitation Act of 1973, and alleging in Count III a civil rights violation pursuant to 42 U.S.C. § 1983. Each of these counterclaims will be considered below and analyzed under the standards set forth in Fed.R.Civ.Proc. 12(b)(6) for dismissal for failure to state a claim upon which relief can be granted.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion requesting dismissal for failure to

state a claim upon which relief can be granted. When evaluating such a motion to dismiss, the court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). The Sixth Circuit further held that the complaint "need only give 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990)). While this standard is a liberal one, more than a "bare assertion of legal conclusions" is required. *Id.* (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

### (1) Counterclaim I: Violation of the IDEA

Defendants' first counterclaim alleges that "[b]y failing to provide the due process hearing in a timely fashion, Counter–Defendant DPS committed a procedural violation of the IDEA." Answer, Affirmative Defenses, Counterclaims ¶ 37. Defendant further alleges that "[b]y failing to adhere to the procedural and substantive requirements of the IDEA, Counter–Defendants DPS and Board of Education are liable to Counter–Plaintiffs for compensatory damages, including compensatory education, and punitive damages."

In *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 980 F.2d 382 (6th Cir.1992), the Sixth Circuit discussed the types of restitutionary relief available under the Education of the Handicapped Act (EHA), the predecessor statute of the IDEA. The court noted that the EHA, now the IDEA, "confers upon courts ... the authority to 'grant such relief as the court determines is appropriate.'" *Id.* at 387 (citing 20 U.S.C. § 1415(e)(2)). However, the court found that under the circumstances of the case that authority did not encompass the awarding of monetary damages. In the words of the Sixth Circuit,

> [i]n this case, general damages for emotional anguish, including the pain of missing two high school games, do not constitute "appropriate" judicial relief. Other cases under the Act have limited monetary damages to restitutionary types of relief. They have allowed restitution to parents for the expense of providing educational services for the handicapped child, but we do not find case authority interpreting the Act to allow an award of general damages for emotional injury or injury to a dignitary interest.

In *School Committee, Town of Burlington v. Massachusetts Department of Education*, 471 U.S. 359, 370–71, 105 S.Ct. 1996, 2003, 85 L.Ed.2d 385 (1985), the Court appears to interpret § 1415(e)(2) as not allowing "damages" in general but as allowing "reimbursement [of] ... expenses that it [the municipal government] should have paid all along and would have borne in the first instance had it developed a proper IEP." We read *Miener v. State of Missouri*, 800 F.2d 749, 752–54 (8th Cir.1986), and *Anderson v. Thompson*, 658 F.2d 1205, 1210–14 (7th Cir.1981), as suggesting the same approach. Within our own circuit, Judge Douglas Hillman reached the same conclusion in *Waterman v. Marquette–Alger Intermediate School District*, 739 F.Supp. 361 (W.D.Mich.1990). *Id.* at 386. Plaintiffs rely heavily upon *Crocker* for the proposition that general damages are not allowed in actions under the IDEA.

In response, defendants argue that monetary damages are available under the IDEA. Defendants cite the U.S. Supreme Court's ruling in *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), where it was stated that as a general rule "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cogniza-

ble cause of action brought pursuant to a federal statute." *Id.* at 70–71, 112 S.Ct. 1028. Defendants further direct this Court's attention to *Moreno v. Consol. Rail Corp.*, 99 F.3d 782, 783 (6th Cir.1996), involving a claim for punitive damages under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. In that case, the Sixth Circuit first looked to whether there was any Congressional intent to limit the *Franklin* presumption in favor of any and all appropriate remedies. Second, the court stated that "absent any such indication, we are invited to determine whether the remedy is 'appropriate.'" *Id.* at 789. The Sixth Circuit found clear support for imposition of compensatory damages: "[e]very circuit that has reached the issue after *Franklin* has held that compensatory damages are available under § 504." *Id.* at 789 (citing *W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir.1995); *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823 (4th Cir.1994); *Rodgers v. Magnet Cove Pub. Schs.*, 34 F.3d 642, 645 (8th Cir.1994); and *Waldrop v. Southern Co. Servs.*, Inc., 24 F.3d 152, 157 n. 5 (11th Cir.1994)). However, "punitive damages are plainly inappropriate under § 504 of the Rehabilitation Act...." *Moreno*, 99 F.3d at 791.

The Third Circuit, in *W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir.1995), has employed the *Franklin* presumption in an IDEA case, and allowed monetary damages to be recovered under the Act. As the appellate court held,

> even were we to limit our focus to IDEA itself, we discern nothing in the text or history suggesting that relief under IDEA is limited in any way, and certainly no "clear direction" sufficient to rebut the presumption that all relief is available. The expansive language of § 1415(f), which was enacted in the shadow of Smith and tracks the broad grant of remedial power allowed a district court reviewing a direct IDEA appeal, see § 20 U.S.C. 1415(e)(2), contains no restrictions on forms of relief. Nor does the legislative history of § 1415(f)

suggest a congressional intent that damages be unavailable. In fact, Congress expressly contemplated that the courts would fashion remedies not specifically enumerated in IDEA. See House Report at 7 (excusing § 1415(f) exhaustion requirement where "the hearing officer lacks the authority to grant the relief sought").

> Indeed, since enactment of § 1415(f), several courts of appeals have approved § 1983 actions to enforce IDEA rights. See *Angela L. v. Pasadena Independent Sch. Dist.*, 918 F.2d 1188, 1193 n. 3 (5th Cir.1990) ( § 1983 and § 504 "permit parents to obtain relief which otherwise is unavailable from the EHA"); *Digre v. Roseville Sch. Independent Dist.*, 841 F.2d 245, 250 (8th Cir.1988) (injunctive relief); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 753 (2d Cir.1987) (declaratory and injunctive relief); *Jackson v. Franklin County Sch. Bd.*, 806 F.2d 623, 631–32 (5th Cir.1986) (compensatory damages or remedial education). See also *Hunt v. Bartman*, 873 F.Supp. 229, 245 (W.D.Mo.1994) (injunctive relief). On the other hand, the Sixth Circuit has indicated skepticism that damages are available in a § 1983 action asserting violations of IDEA. See *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 980 F.2d 382, 386–87 (6th Cir.1992) (disabled transfer student, who was ruled ineligible to participate in school sports and missed two games, did not state a claim for damages under EHA).

*Id.* at 495.

There is an apparent split in the circuits as to whether so-called "general damages" are allowed in IDEA cases. The Sixth Circuit in *Crocker* has *disallowed* such damages under the EHA, the statutory predecessor to the IDEA. Although compensatory damages were allowed in *Moreno v. Consol. Rail Corp.*, *supra*, that case involved a claim pursuant to Section 504 of the Rehabilitation Act of 1973, and not a claim pursuant to the IDEA. In *Matula*, the Third Circuit recog-

nized the Sixth Circuit's divergence in this regard, as indicated in the above-quoted passage. It is a well-settled rule that a district court is bound by decisions of the circuit court of appeals in which it sits. *Crocker* clearly disallows recovery of monetary, non-restitutional, damages under the EHA (now IDEA). Since this is the law of this circuit, this Court is constrained to follow *Crocker* and to hold that defendants have failed state a claim for monetary damages under the IDEA.

Accordingly, plaintiffs' motion to dismiss defendants' first counterclaim will be granted.

### (2) Counterclaim II: Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Counterclaim II alleges a violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. That section is entitled "nondiscrimination under Federal grants and programs," and provides, in pertinent part, that

> [n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). In *Moreno v. Consol. Rail Corp., supra,* the Sixth Circuit held that while compensatory damages are available under Section 504, punitive damages are not. *See id.* at 791.

Plaintiff Wayne RESA argues that the IDEA should be considered the exclusive remedy available to defendants with respect to their claims against this state agency. The Court finds plaintiff's argument unavailing. As the plain language of the amended IDEA demonstrates, Congress intended the Act to be *non-exclusive,* to permit actions brought under the Constitution, § 504 or other federal stat-utes, so long as all administrative remedies have been exhausted:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f).

Plaintiffs acknowledge this non-exclusivity provision, but nevertheless argue that Congress did not intend it to be applied retroactively, i.e., to events which transpired prior to its passage in 1986. *See* Plaintiffs' Brief in Support of Motion for Summary Judgment, p. 14 (citing Handicapped Protection Act (HCPA) of 1986, P.L. 99–372, 100 Stat. 796). According to plaintiffs, the HCPA expressly provided that an amendment to the IDEA allowing prevailing parties to recover attorney's fees was to be applied retroactively. *See* 20 U.S.C. § 1415(i)(3). The HCPA, however, did not expressly make the non-exclusivity provision retroactive. Thus, according to plaintiffs, it should not be construed as applying retroactively. *See* Plaintiffs' Brief in Support of Motion for Summary Judgment, p. 15 (citing *Silano v. Tirozzi,* 651 F.Supp. 1021, 1024–26 (D.Conn.1987)).

Defendants, on the other hand, maintain that the non-exclusivity provision is to be applied retroactively, in fact "all the circuit courts of appeals which have examined the issue, and various district courts as well," have held that the provision applies retroactively. *See* Defendant's Response Brief

to Plaintiff's Motion, pp. 10–11 (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 755 (2d Cir. 1987); *Bd. of Ed. of East Windsor Regional Sch. v. Diamond*, 808 F.2d 987, 995 (3d Cir.1986); *Jackson v. Franklin County Sch. Bd.*, 806 F.2d 623, 627 (5th Cir.1986)). Most notably, the Third Circuit in *Diamond* disposed of the same argument proffered by plaintiffs in the instant case, finding the non-exclusivity provision applicable retroactively:

> The School District relies on the provision [of the EHA, now the IDEA] dealing explicitly with the applicability of the fee award provision to pending cases to determine congressional intent. From this provision, the School District reasons, we should infer that silence with respect to the same subject in [the nonexclusivity provision] means an intention that it be applied only to subsequently filed lawsuits. We cannot accept this attenuated line of reasoning.

*Diamond*, 808 F.2d at 995. The Third Circuit rejected the school district's argument:

> [The attorney fee provision] added an entirely new fee award provision to the Education of the Handicapped Act. Therefore, it was necessary for Congress to address specifically the application of that new provision to pending cases because many cases under the Education of the Handicapped Act might be brought under that Act alone. [The non-exclusivity provision] deals with an entirely separate issue—the misinterpretation in *Smith* of the intention of Congress with respect to the preemptive effect of the Education for the Handicapped Act. Thus section 5, which deals with the application of [the attorney fees provision] to pending cases, tells us

nothing about congressional intention as to the application of [the non-exclusivity provision] to pending cases.

*Id.*

■ A careful review of the case law cited above makes clear that defendants' position is supported by the great weight of authority and that plaintiffs' position is a minority view. The Court concludes that pursuant to 20 U.S.C. § 1415(f), the IDEA by its very own terms is not the exclusive remedy available to aggrieved individuals. Moreover, this non-exclusivity provision may be applied to encompass events which occurred prior to its passage in 1986. As a result, the Court finds that defendants have stated a valid counterclaim pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. However for the reasons discussed immediately below, the Court will nevertheless grant plaintiffs' motion to dismiss defendants' second counterclaim.

■ Despite the finding that defendants' Counterclaim II does state a valid claim, this counterclaim has been wholly satisfied as a result of this Court's affirmance of the state review officer's decision. Defendant Nicholas Pappas will receive the full amount of compensatory education due and owing to him pursuant to the administrative decision rendered December 4, 1998. As the *Moreno* court made clear, defendants are *not* entitled to punitive damages in a Section 504 case. *See* 99 F.3d at 791. Furthermore, with respect to any claim for monetary damages, defendants have neither alleged nor shown that they are entitled to any specific amounts of monetary damages.[8] In light of this fact, the Court finds that

8. It should also be mentioned that with respect to any claims for monetary damages which belong solely to *the parents* of Nicholas Pappas, the statute of limitations would *not* be tolled as to those claims. This is so for the obvious reason that the parents do not suffer from any mental infirmity which would toll the statute of limitations pursuant to Mich. Comp.Laws § 600.5851(2). *See McKellar v.*

*Pa. Dept. of Ed.*, 1999 WL 124381, *4 (E.D.Pa. Feb. 23, 1999) (holding that the applicable state statute "does not toll the statute of limitations for a parent's related claims" under the IDEA). This represents an alternate reason for granting plaintiffs' motion to dismiss Counterclaim II, with respect to claims belonging solely to the parents.

Counterclaim II will be entirely satisfied by the Court's dispositive rulings in the instant memorandum opinion and order.

### (3) Counterclaim III: Violation of Civil Rights pursuant to 42 U.S.C. § 1983.

The third and final counterclaim raised by defendants alleges a civil rights violation pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. According to defendants, plaintiffs "have taken action under color of state law which operated to deprive Nicky Pappas of his federal statutory rights under the IDEA and Section 504 of the Rehabilitation Act." Answer, Affirmative Defenses, Counterclaims ¶ 52. Defendants further assert that plaintiffs "repeatedly retaliated against [defendants] for their attempts to enforce Nicholas Pappas' civil rights" and that plaintiffs' "actions constitute an independent violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *Id.*

Plaintiffs again argue that the non-exclusivity provision of the IDEA, 20 U.S.C. § 1415(f), should not be applied due to lack of retroactivity. This argument has been rejected by this Court for the reasons set forth hereinabove. However, plaintiffs further argue that even if the Court finds the IDEA to be non-exclusive, § 1983 may not be used to enforce the IDEA. *See Sellers v. Sch. Bd. of the City of Manassas*, 141 F.3d 524, 529 (4th Cir.1998).

As with many of the other issues in this case, there is a split in the circuits regarding whether § 1983 can be utilized to enforce the IDEA. The Fourth Circuit has held that the "IDEA provides a comprehensive remedial scheme for violations of its own requirements, [so] that parties may not sue under section 1983 for an IDEA violation." *Sellers*, 141 F.3d at 529. By contrast, the Third Circuit has ruled, in *W.B. v. Matula, supra*, that Congress by enacting the non-exclusivity provision of the IDEA clearly expressed its intent that IDEA violations be redressed through § 1983 actions. According to the *Matula* court, the enactment of the non-exclusivity provision thereby effectively overturned *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), a prior decision which had precluded the bringing of § 1983 actions in EHA (now IDEA) cases.

In *Crocker v. Tenn. Secondary Sch. Athletic Ass'n, supra*, the Sixth Circuit rejected the bringing of a § 1983 action after determining that a disabled student could not recover general damages under the IDEA. The Sixth Circuit explicitly reasoned as follows:

> Because Crocker cannot recover damages under the EHA, he cannot recover damages under § 1983 for any violation of his rights secured by the EHA [now IDEA]. Section 1983 merely secures the federally protected rights a plaintiff already holds. It does not expand those rights.... Section 1983 did not provide a right to damages where none existed before.

*Crocker*, 980 F.2d at 387. The *Crocker* decision, which represents controlling precedent upon this Court, clearly disallowed the recovery of damages pursuant to § 1983 where such damages were not available in the first place under the IDEA.

Since there is a clear split in the circuits relating to whether § 1983 can be utilized to enforce rights guaranteed under the IDEA, this Court must look to Sixth Circuit authority to determine this issue. Just as with general damages under the IDEA, this Court is constrained to follow *Crocker* in its pronouncements regarding the relationship between the IDEA and § 1983. *Crocker* specifically stands for the proposition that § 1983 will *not* provide a right to damages where none is allowed under the substantive statute, in this case, the IDEA.

Accordingly, the Court finds that defendants have failed to state a valid claim under § 1983. The Court will therefore grant plaintiffs' motion to dismiss defen-

dants' third counterclaim pursuant to Fed. R.Civ.Proc. 12(b)(6).

## IV. CONCLUDING REMARKS

In summary, this Court will affirm the rulings of the state review officer relating to Nicholas Pappas' entitlement to compensatory education. The statute of limitations has been tolled due to Mr. Pappas' severe mental retardation. Since plaintiffs have failed to make an adequate showing of prejudice, plaintiffs' argument that defendants' claims are barred by the equitable doctrine of laches must fail. With respect to the counterclaims brought by defendants, the Court will grant plaintiffs' motion to dismiss both counterclaim I (IDEA) and counterclaim III (Section 1983) for the reason that these counterclaims fail to state a claim upon which relief can be granted. Counterclaim II (Section 504 of the Rehabilitation Act of 1973) will be dismissed, not for failure to state a claim upon which relief can be granted, but because this counterclaim has been wholly satisfied by the award of compensatory education in the decision of the state review officer entered December 4, 1998, affirmed herein.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment, construed as a motion for judgment on the pleadings seeking reversal of the decision of the state review officer entered December 4, 1998, is DE-NIED;

IT IS FURTHER ORDERED that defendants' motion to review state hearing officer's decision based on closed record, construed as a motion for judgment on the pleadings seeking affirmance of the decision of the state review officer entered December 4, 1998, is GRANTED;

IT IS FURTHER ORDERED that the decision of the state review officer entered December 4, 1998 is AFFIRMED;

IT IS FURTHER ORDERED that defendant Nicholas Pappas is entitled to compensatory education in the amount of 250 days for the reasons set forth in the state review officer's opinion;

IT IS FURTHER ORDERED that defendants' claims are not barred by the statute of limitations nor are they barred by the equitable doctrine of laches;

IT IS FURTHER ORDERED that plaintiffs' motion to dismiss defendants' Counterclaim I seeking monetary damages pursuant to the IDEA is GRANTED;

IT IS FURTHER ORDERED that plaintiffs' motion to dismiss defendants' Counterclaim II seeking damages pursuant to Section 504 of the Rehabilitation Act of 1973 is GRANTED for the reason that Counterclaim II has been SATISFIED *in full* by the award of compensatory education pursuant to the decision of the state review officer entered December 4, 1998;

IT IS FURTHER ORDERED that plaintiffs' motion to dismiss defendants' Counterclaim III seeking damages pursuant to 42 U.S.C. § 1983 is GRANTED.

A judgment in accordance with the above shall be entered forthwith.

SO ORDERED.